1  STEVEN T. GUBNER – Bar No. 156593
   RICHARD D. BURSTEIN - Bar No. 56661
2  MICHAEL W. DAVIS - Bar No. 274126
   BRUTZKUS GUBNER
3  21650 Oxnard Street, Suite 500
   Woodland Hills, CA 91367
4  Telephone:  (818) 827-9000
   Facsimile:  (818) 827-9099
5  Email:      rburstein@bg.law
               mdavis@bg.law
6
   Attorneys for David Seror, Chapter 7 Trustee
7

8              **UNITED STATES BANKRUPTCY COURT**

9              **CENTRAL DISTRICT OF CALIFORNIA**

10             **SAN FERNANDO VALLEY DIVISION**

11

12  | In re | Case No. 1:12-bk-10231-MT |

13  OWNER MANAGEMENT SERVICE, LLC;     Chapter 7
    OMS, LLC dba in California as OMS GLOBAL,
14  LLC, f/k/a RAMSFIRE GLOBAL, LLC;    Adv. Case No. 1:18-ap-        -MT
    RAMSFIRE EQUITY PARTNERS, INC.;
15  WESTSIDE SERVICING COMPANY; CD-04,
    INC.; CREATIVE GROUP RESOURCE, LLC;  **COMPLAINT TO DETERMINE**
16  DOROTHY MATSUBA; THOMAS             **VALIDITY, PRIORITY AND EXTENT OF**
    MATSUBA; and JAMIE MATSUBA,          **LIENS**
17
18                                        **(11 U.S.C. §544)**
                        Consolidated Debtors.
19

20  DAVID SEROR, Chapter 7 Trustee,

21                  Plaintiff,

22  vs.

23  ALFRED GREGORIAN, and LA VISTA
    PROPERTIES,
24
                    Defendants.
25

26

27

28

                              1

1973976

**TO DEFENDANTS ALFRED GREGORIAN, AN INDIVIDUAL, AND LA VISTA PROPERTIES:**

Plaintiff, David Seror, the duly appointed and acting Chapter 7 Trustee ("Trustee") on behalf of the bankruptcy estate ("Estate") of consolidated debtors Owner Management Service, LLC; OMS, LLC dba in California as OMS Global, LLC f/k/a Ramsfire Global, LLC; Ramsfire Equity Partners, Inc.; Westside Service Company; CD-04, Inc.; Creative Group Resource, LLC; Dorothy Matsuba; Thomas Matsuba; and, Jamie Matsuba (together the "Consolidated Debtors"), complaining of defendants Alfred Gregorian ("Gregorian") and La Vista Properties ("LVP"), alleges as follows:

1.      On or about January 9, 2012 (the "Petition Date"), the Consolidated Debtors commenced this case by filing a voluntary petition under Chapter 11.  On March 14, 2012, the Court entered an order converting this case to one under Chapter 7.  David Seror was appointed as the Chapter 7 Trustee of the Estate and continues in that capacity.

2.      On May 14, 2015, the Court entered its Order and Judgment granting a motion for summary judgment re substantive consolidation consolidating all the debtors ("Substantive Consolidation Order and Judgment").  David Seror is the Chapter 7 Trustee of the Consolidated Debtors' case.

3.      The Court has jurisdiction over this proceeding pursuant to 28 U.S.C. §§ 157(a) and (b)(1)(A) and (K), and 1334(a) and General Order No. 13-05 of the District Court for the Central District of California, as this is a core proceeding under 28 U.S.C. § 157(b)(1), (2)(A) and (E). Venue properly lies in this judicial district pursuant to 28 U.S.C. § 1409(a), in that the instant proceeding is related to the Consolidated Debtors' case under Title 11, Chapter 7 of the United States Code that is still pending.

4.      The Trustee has standing to bring this adversary proceeding on behalf of the Consolidated Debtors and the Estate pursuant to the Order Appointing the Trustee.

5.      The Trustee is informed and believes, and based thereupon alleges that Defendant Gregorian is, and was at all time relevant, a resident of the Central District of California and is otherwise subject to the jurisdiction this Court.

6.      The Trustee is informed and believes, and based thereon alleges, that Defendant LVP

1973976

1   is an entity of unknown nature and origin and, at all times herein mentioned, transacted business in

2   the Central District of California and/or at all times material herein was subject to the jurisdiction of

3   this Court.

4         7.     The property made the subject of this Complaint is located at 631 Caleb Street,

5   Glendale, CA 91202, APN 5630-010-038 ("Property"), and was property of the Debtors' Estate until

6   the Estate's interest therein was sold, upon notice and Court approval, to a third party pursuant to 11

7   U.S.C. 363 §§ (b), and (f), free and clear of all liens, claims, interests and encumbrances with any

8   purported interest, lien, or encumbrance to attach to the net proceeds of sale.

9         8.     Prior to sale, the Trustee obtained a preliminary title report for the Property from

10  Stewart Title Company dated November 30, 2017, a true and correct copy of which is attached

11  hereto as **Exhibit "A"** and is incorporated herein by this reference.

12        9.     Based on the Trustee's review of the title report and various publicly recorded

13  quitclaim and grant deeds, the Trustee is informed and believes that:

14              a.   On or about March 26, 2003, that WorldSavings Bank, FSB, was the owner of the

15                 Property. By virtue of a March 31, 2003, grant deed recorded in the official

16                 records of the Los Angeles County recorder's office bearing instrument no. 03-

17                 0889844, WorldSavings Bank transferred its interest in the Property to Gamlet

18                 Papoian.

19              b.   On April 24, 2003, a quitclaim deed was recorded in the official records of the

20                 Los Angeles County recorder's office bearing instrument no. 03-1171030,

21                 purporting to reflect a transfer of the Property by Gamlet Papoian to Alfred

22                 Gregorian. Gregorian's requested return address as set forth on this quitclaim

23                 deed was listed as 1528 Canada Blvd., Suite 205, Glendale, CA 91208

24                 ("Gregorian Quitclaim").

25              c.   On February 24, 2004, a Short Form Deed of Trust and Assignment of Rents

26                 (Individual) was recorded in the official records of the Los Angeles County

27                 recorder's office bearing instrument no. 04-0426500, purporting to reflect a deed

28                 of trust granted by Gregorian to LVP to secure the purported obligation

1973976

purportedly owed by Gregorian to LVP in the principal sum of $150,000 ("LVP

DOT"). LVP's requested return address as set forth on this deed of trust was listed

as 1528 Canada Blvd., Suite 205, Glendale, CA 91208.

d.  On April 29, 2004, a grant deed was recorded in the official records of the Los

Angeles County recorder's office bearing instrument no. 04-1060315, purporting

to reflect a transfer of the Property by Gamlet Papoian to Gagig Simonian

("Simonian Quitclaim"). Simonian's requested return address as set forth on this

grant deed was listed as 1528 Canada Blvd., Suite 204, Glendale, CA 91208.

e.  On September 17, 2004, a grant deed was recorded in the official records of the

Los Angeles County recorder's office bearing instrument no. 04-2397581,

purporting to reflect a transfer of the Property by Gagig Simonian to Simonian

Holding Corp., a California limited liability corporation.

f.  On September 17, 2004, a grant deed was recorded in the official records of the

Los Angeles County recorder's office bearing instrument no. 04-2397582,

purporting to reflect a transfer of the Property by Simonian Holding Corp., a

California limited liability corporation, to Ronald J. Kinsling, an individual.

g.  On March 7, 2012, a grant deed was recorded in the official records of the Los

Angeles County recorder's office bearing instrument no. 20120360400,

purporting to reflect a transfer of the Property by Ronald J. Kinsling to Global

Asset Holdings Corp.

h.  On March 14, 2012, a grant deed was recorded in the official records of the Los

Angeles County recorder's office bearing instrument no. 20120395225,

purporting to reflect a transfer of the Property by Global Asset Holdings Corp. to

the 631 Caleb Trust ("Caleb Trust"), OMS Global, LLC as Trustee.

10.    The Caleb Trust is a property specific trust created and controlled by one or more of

the Consolidated Debtors, and the transfer of the Property to the Caleb Trust had the effect of

transferring legal title to the Property to the Consolidated Debtors and that the Property was thus

property of the Estate by virtue thereof.  As noted by the Court in its *Memorandum of Decision Re:*

1973976

*Motion for Summary Judgment* (Case 1:13-ap-01394-MT, Docket No. 160, at p. 12, lines 16-21):

> Based on a review of the hundreds of exhibits and transcripts and the
> long history of this case, Defendants' shared business model was to:
> (a) obtain control over homes from distressed borrowers and interject
> itself in the communication channels with Plaintiff and other lenders
> and servicers; (b) collect rents from homes without servicing the
> secured debt; (c) litigate with non-insider lenders to stall foreclosure,
> and (d) eventually abandon the real properties when they were no
> longer of any use or not generating rental income. The undisputed
> record shows that there were hundreds of transfers of real property
> starting as early as 2003 among Debtor and Defendants to strip
> available equity from the properties through loans from non-insider
> lenders.

11.    On January 19, 2018, the Trustee filed his notice of motion and motion to sell the

Estate's interest in the Property to a third party pursuant to 11 U.S.C. §§ 363(b)(1) and (f), free and

clear of liens, interests, claims, and encumbrances, with such liens, interests, claims, and

encumbrances to attach to the net proceeds of that sale (the "Sale Proceeds"), with the same priority

and rights of enforcement as previously existed, and for a finding that the buyer was entitled to a

good faith determination 11 U.S.C. § 363(m) [Case 1:12-bk-10231-MT, Docket No. 2057] (the

"Caleb Sale Motion").   The Caleb Sale Motion was served upon Gregorian and LVP, among others,

at 1528 Canada Blvd. 205, Glendale, CA 91208-3202 and 1901 De Osma St, Las Vegas, NV 89102-

2027.

12.    With respect to Gregorian, LVP, and the purported secured indebtedness reflected by

the LVP DOT, the Caleb Sale Motion provided that:

> The Title Report reflects at exception number 11 a purported lien for $150,000. The
> beneficiary of that trust deed is La Vista Properties, LLC. [sic], and the trustor of that trust
> deed is Alfred Gregorian. Prior to offering Caleb for sale, the Trustee was not aware of this
> possible encumbrance. Preliminary title reports obtained by the Trustee's brokers prior to
> marketing did not reflect the lien, although the brokers used a different title company than the
> company that provided the attached Title Report. Upon reviewing the attached Title Report
> and after analysis, it appeared to the Trustee that this lien was suspicious. The beneficiary
> and the trustor have the same business address on the lien documents. Because of these
> concerns, on December 20, 2017, the Trustee's counsel wrote to both the beneficiary and the
> trustor at the address on the lien documents, sent by overnight delivery, and requested
> evidence of the payment of the asserted consideration for the trust deed and an explanation of
> its background. The Trustee's counsel received no response at all to these letters, nor were
> they returned to his counsel as undeliverable.

5

The absence of the response gives weight to the Trustee's concerns about the legitimacy of this lien, which is also apparent in the suspicious circumstances noted above. The Trustee will be giving notice of this motion specifically to the beneficiary and trustor of this lien at the address shown for them on the lien documents. Subsequent research by the Trustee's counsel has located a possible additional address for Mr. Gregorian in Las Vegas, and indications that La Vista Properties, LLC. [sic], might no longer be in business. Therefore, the Trustee's notice will additionally be given to Mr. Gregorian and separately to La Vista Properties, LLC [sic] at the said Las Vegas address.

If by the time of the hearing, no sufficient response is provided, the Trustee urges the Court to then order this sale free and clear of this lien, the lien attaching to the net proceeds of the sale. The lien will under those circumstances be the subject of a bona fide dispute, 11 USC Section 363 (f) (4). The totality of the circumstances is the test for what qualifies as a bona fide dispute, 2 Bankruptcy Law Manual Section 15:12 (5th Edition, 2017), and here the Trustee has sought out the lien claimant for information and has been ignored, he has not rested simply on his untested perceptions, *see, e.g.*, *In re Takeout Taxi Holdings, Inc.*, 307 BR 525 (BK ED Va, Alexandria Division, 2004)."

13.      After sufficient notice as required by law, and in which Gregorian and LVP were provided notice at their last known addresses of record, on February 26, 2018, the Court entered an Order granting the Caleb Sale Motion and, among other things, approving the sale of the Property as requested by the Trustee, free and clear of the LVP DOT, with the LVP DOT to attach to the Sale Proceeds [Case 1:12-bk-10231-MT, Docket No. 2069] ("Caleb Sale Order").

14.      On or about March 28, 2018, the sale transaction contemplated by the Caleb Sale Motion was closed and the Trustee on behalf of the Estate received Sale Proceeds in the amount of $91,765.78.

15.      Pursuant to the Caleb Sale Order, LVP's purported lien was transferred and attached to the Sale Proceeds with the same force, effect, validity, and priority that existed against the Property and subject to any claims and defenses the Estate may possess with respect thereto.

## FIRST CLAIM FOR RELIEF

### TO DETERMINE VALIDITY, PRIORITY AND EXTENT OF LVP'S PURPORTED LIEN

### (11 U.S.C. § 544)

16.      Plaintiff realleges and incorporates by reference the allegations contained in Paragraphs 1 through 15, above.

17.      The Gregorian Quitclaim was recorded in April 2003 and the LVP DOT was recorded

6

1973976

1    in February 2004. LVP and Gregorian have the same business addresses on the LVP DOT and the

2    Gregorian Quitclaim.

3    18.    Further, LVP and Gregorian appear to have conducted business in the same office

4    building as Gagig Simonian (whose address is 1528 Canada Blvd., Suite 204, Glendale, CA 91208,

5    where LVP and Gregorian's address is Suite 205). Gamlet Papoian appears to have executed

6    conflicting deeds, first transferring the Property to Gregorian, and then transferring the Property to

7    Simonian without any intervening transfer from Gregorian back to Papoian.

8    19.    At all times relevant, a business relationship existed between Gregorian, LVP,

9    Papoian, and/or Simonian, the nature and/or extent of which is not presently known to the Trustee.

10    20.    Chain of title of the Property flowed from Papoian to Simonian and thereby

11    ultimately to the Estate, notwithstanding the Gregorian Quitclaim (which appears to have preceded

12    the Simonian Quitclaim). The LVP DOT was granted based upon Gregorian's purported interest in

13    the Property received by virtue the Gregorian Quitclaim.

14    21.    On December 27, 2017, prior to the filing of the Caleb Sale Motion, the Trustee

15    through counsel and by overnight mail attempted to contact Gregorian and LVP regarding the

16    foregoing and the sale of the Property, and notified them that in the absence of a response thereto the

17    Trustee would seek to sell the Property free and clear of the LVP DOT and would seek to avoid the

18    LVP DOT as encumbrance with respect to the Sale Proceeds. The letter was directed to LVP and

19    Gregorian at 1528 Canada Blvd., Suite 205, Glendale, CA 91208. To date, the Trustee has not

20    received any communication from LVP and Gregorian regarding the Property and/or LVP's

21    purported interest therein as reflected in the LVP DOT.

22    22.    Based on the relatedness of Gregorian, LVP, Papoian, and Simonian, and the failure

23    by Gregorian and/or LVP to respond to the Trustee's demands for information regarding the LVP

24    DOT, the Trustee is informed and believes that, to the extent it was ever valid, that any liability

25    regarding the LVP DOT was discharged by subsequent satisfaction of the underlying indebtedness

26    described thereby.

27    **WHEREFORE**, the Trustee prays for: (1) judgment determining that the LVP DOT does not

28    attach to the Sale Proceeds and for the approval to release such funds to the Estate free and clear of

1973976

1  any claim by LVP; (2) costs incurred connection with this action; and, (3) for such other relief as the

2  Court deems just and proper.

3

4  DATED: July 17, 2018                         BRUTZKUS GUBNER

5                                                              /s/ Michael Davis
                                              By:_____
6                                                   Richard D. Burstein
                                                  Michael Davis
7                                                 Attorneys for David Seror, Chapter 7 Trustee

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

8

# TITLE SNAPSHOT GRADE

**STEWART TITLE** ®

4195 East Thousand Oaks Boulevard, Suite 107, Westlake Village, CA 91362
Main: (805) 367-5624 | Direct: (805) 367-5628



# D

**What does this grade mean?**
**A** = No title curative issues
**B** = Issues to pay or clear
**C** = Liens to clear
**D** = Title curative issues

**REO transactions only:**
**E** = REO curative issues
**R** = IRS curative issues

**Prepared On**
November 30, 2017

**Order Number**
CA0610-17001235-60

**Loan Number**

**Property Address**
631 Caleb Street
Glendale, CA 91202

## Title is Vested in

■ 631 Caleb Trust; OMS Global, LLC as Trustee, subject to Item No.13 of Schedule B,

Subject to proceedings pending in the bankruptcy court where a petition for relief was filed:

Name of Debtor: OMS Global, LLC
Date of Filing:  December 18, 2013
U.S. District Court:  Central District of California (San Fernando Valley)
Case No: ap-01394MT
Disclosed by:  Chapter 7

## Issues to Pay or Clear at Closing

| Issue | Description |
|---|---|
| ■ **Possible Judgments and Lien(s)** | The record reflects one or more miscellaneous judgments and liens associated to the vested owner(s). Payoff or Subordination may be necessary. |
| ■ **Taxes Due** | Property taxes are currently due and payable. |
| ■ **Trust** | The Property is vested in a Trust.  A copy of the Trust Agreement and/or Certification of Trust may be required. |

## Liens to Clear/Potential Failure of Title

| Issue | Description |
|---|---|
| ■ **Bankruptcy** | The record reflects an open or recent Bankruptcy. Additional documentation may be required. |
| ■ **Active Senior Foreclosure** | A senior lien is foreclosing on the property. |
| ■ **Private Secured Lien(s)** | One or more unreleased Security Instruments in favor of a Private Party. Payoff or Subordination may be necessary. |
| ■ **Corporation, LLC, Partnership** | The vesting is in the name of a Corporation, LLC or Partnership.  Additional documentation may be required. |

# Questions

**For questions regarding this Title Snapshot, please contact:**
Steve Lopez
(805) 367-5628
Steve.Lopez@stewart.com

The Title Snapshot is intended for informational purposes only.  It is not intended as a guaranty, affirmation, indemnification, or certification of any fact, insurance coverage or conclusion of law to any insured or party to a transaction.  No liability for reliance thereon is inferred, implied or expressed.

**EXHIBIT "A"**

# stewart title®

4195 East Thousand Oaks Boulevard, Suite 107, Westlake Village, CA 91362
Main: (805) 367-5624 | Direct: (805) 367-5628

## PRELIMINARY REPORT

A & A Escrow Services, Inc.
415 N. Crescent Drive, Suite 320
Beverly Hills, CA 90210
Attn: Antonia Delgado

Our Order:     CA0610-17001235-60
Escrow Ref:     104147-AA
Listing Agent Ref: 631 Caleb
**When Replying Please Contact:**
Stewart Title of California
4195 East Thousand Oaks Boulevard, Suite 107
Westlake Village, CA 91362
Attn: Steve Lopez
(805) 367-5628

Todays Date:     November 30, 2017

**Property Address: 631 Caleb Street, Glendale, CA 91202**

In response to the application for a Policy of Title Insurance, Stewart Title of California hereby reports that it is prepared to issue, or cause to be issued, as of the date hereof, a Stewart Title Guaranty Company Policy or Policies of Title Insurance describing the land and the estate or interest therein hereinafter set forth, insuring against loss which may be sustained by reason of any defect, lien or encumbrance not shown or referred to as an exception herein and/or not excluded from coverage pursuant to the printed Schedules, Conditions and Stipulations of said Policy forms.

The printed Exceptions and Exclusions from the coverage and Limitations on Covered Risks of said Policy or Policies of Title Insurance are set forth in Exhibit B attached. The policy to be issued may contain an arbitration clause. When the Amount of Insurance is less than that set forth in the arbitration clause, all arbitrable matters shall be arbitrated at the option of either the Company or the Insured as the exclusive remedy of the parties. Limitations on Covered Risks applicable to the CLTA and ALTA Homeowner's Policies of Title Insurance which establish a Deductible Amount and a Maximum Dollar Limit of Liability for certain coverages are also set forth in Exhibit B. Copies of the Policy forms should be read. They are available from the office which issued this report.

**Please read the exceptions shown or referred to herein and the exceptions and exclusions set forth in Exhibit B of this report carefully. The exceptions and exclusions are meant to provide you with notice of matters which are not covered under the terms of the Policy or Policies of Title Insurance and should be carefully considered.**

**It is important to note that this preliminary report is not a written representation as to the condition of title and may not list all liens, defects and encumbrances affecting title to the land.**

This report (and any supplements or amendments hereto) is issued solely for the purpose of facilitating the issuance of a Policy or Policies of Title Insurance and no liability is assumed hereby. If it is desired that liability be assumed prior to the issuance of a Policy or Policies of Title Insurance, a Binder or Commitment should be requested.

**Dated as of November 15, 2017, at 07:30 AM.**

Steve Lopez
Title Officer
Steve.Lopez@stewart.com

**The form of policy of title insurance contemplated by this report is:**

ALTA Loan Policy 2006 with ALTA Endorsement-Form 1 Coverage, ALTA Homeowner's Policy (12/02/13), or equivalent, Underwritten by: Stewart Title Guaranty Company

---

# SCHEDULE A

The estate or interest in the land hereinafter described or referred to covered by this Report is:

A Fee

Title to said estate or interest at the date hereof is vested in:

631 Caleb Trust; OMS Global, LLC as Trustee, subject to Item No.13 of Schedule B,

Subject to proceedings pending in the bankruptcy court where a petition for relief was filed:

Name of Debtor: OMS Global, LLC
Date of Filing:  December 18, 2013
U.S. District Court:  Central District of California (San Fernando Valley)
Case No: ap-01394MT
Disclosed by:  Chapter 7

The land hereinafter referred to is situated in the City of Glendale, County of Los Angeles, State of CA, and is described as follows:

Lot 11 of Tract 5415, in the City of Glendale, County of Los Angeles, State of California, as per map recorded in Book 131 Pages 85 through 87, inclusive of Maps, in the Office of the County Recorder of said County.

Except therefrom that portion of Lot 11, Tract 5415, as shown on Map recorded in Book 131 Pages 85 and 87 inclusive of Maps, in the Office of the County Recorder of said County, described as follows

Beginning at the Northeasterly corner of said Lot; thence along the Southeasterly line of said Lot, South 32 degrees 47 minutes 34 seconds West 50.00 feet; thence North 12 degrees 09 minutes 26 seconds West 42.33 feet to the Northerly line of said Lot; thence Easterly along said Northerly line to the place of beginning.

APN: 5630-010-038

---

## SCHEDULE B

At the date hereof, Exceptions to coverage, in addition to the printed Exception and Exclusions contained in said policy form would be as follows:

1.   General and Special City and/or County taxes, including any personal property taxes and any assessments collected with taxes, for the fiscal year 2017 - 2018:
     1st Installment:        $6,168.26          Open
     Penalty:                $616.82If not paid by December 10, 2017
     2nd Installment:        $6,168.26          Open
     Penalty:                $626.82If not paid by April 10, 2018
     Exemption:              Not Set Out
     Code Area:              04045
     Assessment No.          5630-010-038

2.   Assessments, if any, for community facility districts affecting said land which may exist by virtue of assessment maps or notices filed by said districts.  Said assessments are collected with the County Taxes.

3.   The lien of supplemental taxes, if any, assessed pursuant to the provisions of Chapter 3.5 (commencing with Section 75) of the revenue and taxation code of the State of California.

4.   Water rights, claims or title to water in or under said land, whether or not shown by the public records.

5.   Such rights or easements in favor of the city of los angeles, as Successor to los angeles gas and electric corporation, affecting the portion of said land herein stated, for pole lines, conduits and incidental purposes, disclosed by a declaration by the department of Water and power of said city:
     Recorded: of deeds
     Book: 3611
     Page: 28
     Affects: said land

6.   An easement or other provisions for the purposes shown below and rights incidental thereto as shown on the recorded map:
     Subdivision:        Tract 5415
     Purpose:            Public Utilities
     Affects:            As Delineated Thereon

7.   An easement affecting the portion of said land for the purpose shown below and rights incidental thereto as set forth in a document:
     Purpose:            Public Utilities
     Recorded:            in Book 6783 and Page 236, of Official Records.
     Affects:             Said Land

     No representation is made as to the present ownership of said easement.

8.   Covenants, conditions and restrictions (Restrictions, if any, based on race, color, religion, sex, handicap, familial status or national origin are deleted.) as set forth in the document referred to in the numbered item last above shown.

     Said covenants, conditions, and restrictions provide that a violation thereof shall not defeat or render invalid the lien of any mortgage or deed of trust made in good faith and for value.

9.   An easement affecting the portion of said land for the purpose shown below and rights incidental thereto as set forth in a document:
     Purpose:            Public Utilities
     Recorded:            in Book D2078 and Page 928, of Official Records.
     Affects:             The Southerly 5 Feet

     No representation is made as to the present ownership of said easement.

10.    An easement affecting the portion of said land for the purpose shown below and rights incidental thereto as set forth in a document:

Purpose:        Pole Lines
Recorded:       February 25, 1965 as Instrument Number 3754, of Official Records.
Affects:        A Portion of Lot 11

No representation is made as to the present ownership of said easement.

11.    Deed of Trust to secure an indebtedness in the amount shown below, and any other obligations secured thereby:

Amount:         $150,000.00
Dated:          January 2, 2004
Trustor:        Alfred Gregorian
Trustee:        American Title Company, a California corporation
Beneficiary:    La Vista Properties
Recorded:       February 24, 2004 as Instrument Number 04 0426500 of Official Records.

a.    To avoid delays at the time of closing, please submit the original note, deed of trust and request for reconveyance to this office, at least one week prior to the close of escrow.

12.    Deed of Trust to secure an indebtedness in the amount shown below, and any other obligations secured thereby:

Amount:         $1,000,000.00
Dated:          September 6, 2006
Trustor:        Ronald J, Kinsling, a single man
Trustee:        California Reconveyance Company, a California Corp
Beneficiary:    Washington Mutual Bank
Recorded:       September 12, 2006 as Instrument Number 06 2026012 of Official Records.

a.    By mesne assignments of record, the beneficial interest under said deed of trust was assigned to: Assignee: U.S. Bank National Association as Trustee, Successor in Interest to Bank of America, National Association as Trustee Successor by Merger to LaSalle Bank, National Association as Trustee for WaMu Mortgage Pass- Through Certificates, Series 2006-AR15 Trust
Mailing Address:  c/o J.P. Morgan Chase Bank, N.A. 780 Delta Drive LA4-1040 Monroe, LA 71203
Loan No.:  Not Set Out
Dated:  December 10, 2015
Last Recorded Assignment:  December 31, 2015 as Instrument Number 20151648904 of Official Records.

b.    A Substitution of Trustee under said deed of trust which names as the substituted trustee, the following
Trustee:        MTC Financial Inc. dba Trustee Corps
Recorded:       February 2, 2016 as Instrument Number 20160117570, of official records.

c.    A Notice of Default under the terms of said deed of trust
Executed by: MTC Financial Inc. dba Trustee Corps as duly Appointed Successor Trustee
Recorded: February 2, 2016 as Instrument Number 20160117571 of Official Records.

d.    A Notice of Trustee's Sale recorded June 6, 2016 as Instrument Number 20160645088 of  Official Records executed pursuant to the Deed of Trust recorded September 12, 2006 as Instrument Number 06-2026012 of  Official Records.

13.    The effect of a deed
Dated:     March 12, 2012
Grantor:   Global Asset Holdings Corp.
Grantee:   631 Caleb Trust; OMS Global, LLC as Trustee
Recorded:  March 14, 2012 as Instrument Number 20120395225, of official records.
The Company is not willing to divest the interest of Global Asset Holdings Corp.. An inquiry of the parties shall be required prior to the issuance of any policy of title insurance.
In order to complete this report, the company **requires** a signed and notarized Affidavit from the above stated Grantor.  The blank Affidavit form is attached to this report for your convenience.

a.     This Company will require the following documents in order to insure a conveyance or encumbrance by corporation or un incorporated association names below:
Corporation: Global Asset Holdings Corp.
(a) A copy of the corporation By-Laws or Articles.
(b) An original or certified copy of the Resolution authorizing the subject transaction.
(c) If the Articles or By-Laws require approval by a "parent" organization, we will also require a copy of those By-Laws or Articles.
(d) If an unincorporated association, a statement pursuant to any applicable State law. The right is reserved to add requirements or additional items after completion of such review.

14.    Deed of Trust to secure an indebtedness in the amount shown below, and any other obligations secured thereby:
Amount:         $100,000.00
Dated:          March 13, 2012
Trustor:        631 Caleb Trust; OMS Global, LLC as Trustee
Trustee:        West Side Servicing Company
Beneficiary:    CD-04, Inc.
Recorded:       March 14, 2012 as Instrument Number 20120395226 of Official Records.

a.     The above security instrument is reflected as an equity line loan or a revolving line of credit.  Said instrument must be closed or subordinated at or prior to closing.

15.    A lien for unsecured property taxes filed by the tax collector of the county shown, for the amount set forth, and any other amounts due:
County:         Los Angeles
Fiscal Year:    2014-2015
Taxpayer:       OMS Global LLC
County ID:      14308-26100
Number:         14/40757743
Amount:         $82.81
Recorded:       December 3, 2014 at Instrument Number 20141299073, of official records.

16.    An Abstract of judgment recorded September 2, 2015 as  Instrument No. 20151085554, of official records:
Case No.:   14UA3146
Entry Date: July 30, 2015
Debtor:     OMS Global, LLC as Successor Trustee of the 57th Trust
Creditor:   Enchantee Lanice Minor
Amount:     $2,200.00 and any other amounts due thereunder.

17.    A lien for unsecured property taxes filed by the tax collector of the county shown, for the amount set forth, and any other amounts due:
County:         Los Angeles
Fiscal Year:    2015-2016
Taxpayer:       OMS Global, LLC
County ID:      15316-24507
Number:         15/40693521
Amount:         $200.22
Recorded:       December 8, 2015 at Instrument Number 20151535741, of official records.

18.    A tax lien for the amount shown, and any other amounts due, in favor of the State of California:
Amount:          $451.80
Filed by:        State of California Employment Development Department
Taxpayer:        OMS Global, LLC
Certificate No:  G001189700
Recorded:        February 1, 2016 as Instrument Number 20160111640 of Official Records

19.    A tax lien for the amount shown, and any other amounts due, in favor of the State of California:
Amount:          $4,338.07
Filed by:        State of California Employment Development Department
Taxpayer:        OMS Global, LLC
Certificate No:  G001314775
Recorded:        July 13, 2016 as Instrument Number 20160815275 of Official Records

20.     A lien for unsecured property taxes filed by the tax collector of the county shown, for the amount set forth, and any other amounts due:

County:             Los Angeles
Fiscal Year:        2016-2017
Taxpayer:           OMS Global LLC
County ID:          16312-24522
Number:             16/40685232
Amount:             $196.92
Recorded:           December 7, 2016 at Instrument Number 20161544499, of official records.

21.     If title is to be insured in the trustee(s) of a trust or their act is to be insured, we will require a full copy of the trust agreement and any amendments thereto. In certain situations the Company may accept a Trustee certificate pursuant to Section 18100.5 of the California Probate Code for the trust agreement. The Company reserves the right to except additional items and/or make additional requirements after reviewing said documents.

Name of Trust: 631 Caleb Trust

22.     Prior to the issuance of any policy of title insurance, the Company will require the following with respect to OMS Global LLC, a limited liability company:
(1) A copy of its operating agreement and any amendments thereto must be submitted to the Company for review.
(2) A certified copy of its articles of organization (LLC-1), any certificate of correction (LLC-11), certificate of amendment (LLC-2), or restatement of articles of organization (LLC-10) must be submitted to the Company for review.
(3) With respect to any deed, deed of trust, lease, subordination agreement or other document or instrument executed by such limited liability company and presented to the Company for recording or upon which the Company is asked to rely, such document or instrument must be executed in accordance with the following:
    (a) If the limited liability company properly operates through officers appointed or elected pursuant to the terms of the written operating agreement, such document or instrument must be executed by at least two duly elected or appointed officers as follows:  the chairman of the board, the president, vice president, and any secretary, assistant secretary, the chief financial officer or any assistant treasurer.
    (b) If the limited liability company properly operates through a manager or managers identified in the articles of organization and/or duly elected pursuant to the terms of a written operating agreement, such document or instrument must be executed by at least two such managers or by one manager if the limited liability company properly operates with the existence of only one manager.
(4) Other requirements which the Company may impose following its review of the material required herein and other information which the Company may require.

23.     This Company will require the following documents for review prior to the issuance of any title assurance predicated upon a conveyance or encumbrance by the suspended corporation named below.
Suspended LLC: OMS Global LLC, a limited liability company:

(a) A Certificate of Revivor,
(b) A Certificate of Relief from Voidability; and
(c) Comfirmation that there now in good standing and authorized to do business in the State or Country where the said Corporation was formed.

The Company reserves the right to add additional items or make further requirements after review of the requested documentation.

24.     In order to complete this report, this Company requires a Statement of Information to be completed by the following party(ies),

Party(ies): All Parties

The Company reserves the right to add additional items or make further requirements after review of the requested Statement(s) of Information.

**END OF SCHEDULE B**

---

# stewart title®

4195 East Thousand Oaks Boulevard, Suite 107, Westlake Village, CA 91362
Main: (805) 367-5624 | Direct: (805) 367-5628

Attn:

**Borrower:  Brian Der Vartanian**

**Lenders Supplemental Report to Preliminary Report**

The Preliminary Report (including any supplements or amendments thereto) to which this is attached is hereby modified and/or supplemented in order to reflect the following additional items relating to the issuance of an American Land Title Association loan policy form as follows:

A.      This report is preparatory to this issuance of an American Land Title Association loan policy of title insurance . This report discloses nothing, which would preclude the issuance of said American Land Title Association loan policy of title insurance with endorsement No. 100 attached thereto.

B.      The improvements on said land are designated as:

    Single Family   (*Residential*)

631 Caleb Street, in the City of Glendale, County of Los Angeles, State of California.

C.      Pursuant to information provided to Stewart Title of California as of the date hereinabove, the proposed insured loan amount is $1.00 with the proposed insured lender being .

D.      The only conveyance(s) affecting said land recorded with 24 months of the date of this report are as follows:

NONE

# stewart title®

4195 East Thousand Oaks Boulevard, Suite 107, Westlake Village, CA 91362
Main: (805) 367-5624 | Direct: (805) 367-5628

**Notes and Requirements Section**

Note 1:   On July 1, 1985, Assembly Bill 3132 became effective.  Assembly Bill 3132 adds and repeals portions of Sections 480.3 and 480.4 of the Revenue and Taxation Code of the State of California.

The act requires the County Assessor and/or Recorder to make available a statutorily prescribed form entitled "Preliminary Change of Ownership Report".  Said report must be completed by the buyer and filed concurrently with the recordation of the documents evidencing the change of ownership.  Failure to present the Change of Ownership Report at the time of recordation will cause the County Recorder to charge an additional $20.00 penalty recording fee.  The fee cannot be charged if the transfer document is accompanied by the affidavit stating that the buyer/transferee is not a resident of the State of California.  This report is for official use only and is not open to public inspection.

For further information, contact the Change of Ownership Section in the Assessor's Office located in the County of said property or the County Recorder's Office located in the County of said property.

Note 2:   Attached are Privacy Policy Notices in compliance with the Gramm-Leach-Bliley Act (GLBA) effective July 1, 2001.  Please review said Notices regarding personal information.

Note 3:   The map attached hereto may or may not be a survey of the land depicted thereon.  You should not rely upon it for any purpose other than orientation to the general location of the parcel or parcels depicted.  This company expressly disclaims any liability for alleged loss or damage which may result from reliance upon this map.

Note 4:   The only conveyance(s) affecting said land recorded with 24 months of the date of this report are as follows:

NONE

Note 5:   Additional Requirements for "Short Sale" Transactions in which a lender will accept less than the outstanding balance of its loan as full satisfaction of the obligation:

The Company will require, prior to the issuance of a policy of title insurance, evidence that the first-position trust deed holder has received and acknowledged all payments to be made to subordinate-position lien holders, regardless of whether such payments are to be made from proceeds or from contributions by real estate brokers and/or buyers in the subject transaction, or from other third-party sources. Evidence shall include but not be limited to: (a) a written demand from the first-position trust deed holder acknowledging and approving payments to subordinate position lien holders from proceeds and otherwise; or (b) a supplemental letter or amended demand from the first-position lien holder acknowledging payments to be made to subordinate lien holders from sources other than proceeds (including broker commissions and additional buyer deposits).

# stewart title®

4195 East Thousand Oaks Boulevard, Suite 107, Westlake Village, CA 91362
Main: (805) 367-5624 | Direct: (805) 367-5628

## CALIFORNIA "GOOD FUNDS" LAW

California Insurance Code Section 12413.1 regulates the disbursement of escrow and sub-escrow funds by title companies. The law requires that funds be deposited in the title company escrow account and available for withdrawal prior to disbursement. Funds received by A & A Escrow Services, Inc. via wire transfer may be disbursed upon receipt. Funds received via cashier's checks or teller checks drawn on a California Bank may be disbursed on the next business day after the day of deposit. If funds are received by any other means, recording and/or disbursement may be delayed, and you should contact your title or escrow officer. All escrow and sub-escrow funds received will be deposited with other escrow funds in one or more non-interest bearing escrow accounts in a financial institution selected by A & A Escrow Services, Inc.. A & A Escrow Services, Inc. may receive certain direct or indirect benefits from the financial institution by reason of the deposit of such funds or the maintenance of such accounts with the financial institution, and A & A Escrow Services, Inc. shall have no obligation to account to the depositing party in any manner for the value of, or to pay to such party, any benefit received by A & A Escrow Services, Inc.. Such benefits shall be deemed additional compensation to A & A Escrow Services, Inc. for its services in connection with the escrow or sub-escrow.  If any check submitted is dishonored upon presentation for payment, you are authorized to notify all principals and/or their respective agents of such nonpayment.

| Good Funds Law | Created: 11/30/2017 | CA0610-17001235-60 |

# Stewart Title Guaranty Company Privacy Notice
# Stewart Title Companies

### WHAT DO THE STEWART TITLE COMPANIES DO WITH YOUR PERSONAL INFORMATION?

Federal and applicable state law and regulations give consumers the right to limit some but not all sharing. Federal and applicable state law regulations also require us to tell you how we collect, share, and protect your personal information. Please read this notice carefully to understand how we use your personal information. This privacy notice is distributed on behalf of the Stewart Title Guaranty Company and its title affiliates (the Stewart Title Companies), pursuant to Title V of the Gramm-Leach-Bliley Act (GLBA).

The types of personal information we collect and share depend on the product or service that you have sought through us. This information can include social security numbers and driver's license number.

All financial companies, such as the Stewart Title Companies, need to share customers' personal information to run their everyday business—to process transactions and maintain customer accounts. In the section below, we list the reasons that we can share customers' personal information; the reasons that we choose to share; and whether you can limit this sharing.

| Reasons we can share your personal information. | Do we share | Can you limit this sharing? |
|---|---|---|
| **For our everyday business purposes—** to process your transactions and maintain your account. This may include running the business and managing customer accounts, such as processing transactions, mailing, and auditing services, and responding to court orders and legal investigations. | Yes | No |
| **For our marketing purposes** — to offer our products and services to you. | Yes | No |
| **For joint marketing with other financial companies** | No | We don't share |
| **For our affiliates' everyday business purposes—** information about your transactions and experiences. Affiliates are companies related by common ownership or control. They can be financial and non-financial companies. *Our affiliates may include companies with a Stewart name; financial companies, such as Stewart Title Company* | Yes | No |
| **For our affiliates' everyday business purposes—** information about your creditworthiness. | No | We don't share |
| **For our affiliates to market to you –** For your convenience, Stewart has developed a means for you to opt out from its affiliates marketing even though such mechanism is not legally required. | Yes | Yes, send your first and last name, the email address used in your transaction, your Stewart file number and the Stewart office location that is handling your transaction by email to optout@stewart.com or fax to 1-800-335-9591. |
| **For non-affiliates to market to you.** Non-affiliates are companies not related by common ownership or control. They can be financial and non-financial companies. | No | We don't share |

We may disclose your personal information to our affiliates or to non-affiliates as permitted by law. If you request a transaction with a non-affiliate, such as a third party insurance company, we will disclose your personal information to that non-affiliate. [We do not control their subsequent use of information, and suggest you refer to their privacy notices.]

### SHARING PRACTICES

| | |
|---|---|
| **How often do the Stewart Title companies notify me about their practices?** | We must notify you about our sharing practices when you request a transaction. |
| **How do the Stewart Title Companies protect my personal information?** | To protect your personal information from unauthorized access and use, we use security measures that comply with federal law. These measures include computer, file, and building safeguards. |
| **How do the Stewart Title Companies collect my personal information?** | We collect your personal information, for example, when you<br>• request insurance-related services<br>• provide such information to us<br>We also collect your personal information from others, such as the real estate agent or lender involved in your transaction, credit reporting agencies, affiliates or other companies. |
| **What sharing can I limit?** | Although federal and state law give you the right to limit sharing (e.g., opt out) in certain instances, we do not share your personal information in those instances. |

**Contact us: If you have any questions about this privacy notice, please contact us at: *Stewart Title Guaranty Company, 1980 Post Oak Blvd., Privacy Officer, Houston, Texas 77056***

Revised 11-19-2013

---

# stewart title®

4195 East Thousand Oaks Boulevard, Suite 107, Westlake Village, CA 91362
Main: (805) 367-5624 | Direct: (805) 367-5628

## AFFILIATED BUSINESS ARRANGEMENT DISCLOSURE STATEMENT

Date:            November 30, 2017

Order No.:       CA0610-17001235-60

Property:        631 Caleb Street, Glendale, CA 91202

From:            A & A Escrow Services, Inc.


This is to give you notice that Stewart Title of California, Inc. ("Stewart Title") has a business relationship with Stewart Solutions, LLC, DBA - Stewart Specialty Insurance Services, LLC ("Stewart Insurance"). Stewart Information Services Corporation owns 100% of Stewart Insurance and Stewart Title of California. Because of this relationship, this referral may provide Stewart Title a financial or other benefit.


Set forth below is the estimated charge or range of charges for the settlement services listed. You are NOT required to use the listed provider(s) as a condition for purchase, sale, or refinance of the subject Property. THERE ARE FREQUENTLY OTHER SETTLEMENT SERVICE PROVIDERS AVAILABLE WITH SIMILAR SERVICES. YOU ARE FREE TO SHOP AROUND TO DETERMINE THAT YOU ARE RECEIVING THE BEST SERVICES AND THE BEST RATE FOR THESE SERVICES.

| Stewart Insurance Settlement Service | Charge or range of charges |
|---|---|
| Hazard Insurance | $400.00 to $6,500.00 |
| Home Warranty | $255.00 to $ 780.00 |
| Natural Hazard Disclosure Report | $ 42.50 to $ 149.50 |

# stewart title®

4195 East Thousand Oaks Boulevard, Suite 107, Westlake Village, CA 91362
Main: (805) 367-5624 | Direct: (805) 367-5628

## FOR TRANSACTIONS WHERE STEWART
## TITLE OF CALIFORNIA IS NOT CLOSING ESCROW

Order Number:               CA0610-17001235-60
Subject Property Address:  631 Caleb Street, Glendale, CA 91202
                            APN: 5630-010-038

## ACKNOWLEDGMENT OF RECEIPT, UNDERSTANDING
## AND APPROVAL OF "AFFILIATED BUSINESS
## ARRANGEMENT DISCLOSURE STATEMENT" AND
## "STG PRIVACY NOTICE FOR STEWART TITLE COMPANIES"

The undersigned hereby acknowledge that I/we have received, read, understand and approve Stewart Title of California, Inc.'s "Affiliated Business Arrangement Disclosure Statement" and "STG Privacy Notice for Stewart Title Companies", provided to me/us in connection with the above captioned matter.

Read and signed on _____     _____
                                             Brian Der Vartanian

# stewart title®

4195 East Thousand Oaks Boulevard, Suite 107, Westlake Village, CA 91362
Main: (805) 367-5624 | Direct: (805) 367-5628

## AVAILABLE DISCOUNTS DISCLOSURE STATEMENT

This is to give you notice that Stewart Title of California, Inc. ("Stewart Title") is pleased to inform you that upon proper qualification, there are premium discounts available upon the purchase of title insurance covering improved property with a one to four family residential dwelling.

Such discounts apply to and include:

Property located within an area proclaimed a state or federal disaster area;

Property purchased from a foreclosing beneficiary or successful bidder at a foreclosure sale;

Property being refinanced.

Please talk with your escrow or title officer to determine your qualification for any of these discounts.

**EXHIBIT A**
Legal Description

The land hereinafter referred to is situated in the City of Glendale, County of Los Angeles, State of CA, and is described as follows:

Lot 11 of Tract 5415, in the City of Glendale, County of Los Angeles, State of California, as per map recorded in Book 131 Pages 85 through 87, inclusive of Maps, in the Office of the County Recorder of said County.

Except therefrom that portion of Lot 11, Tract 5415, as shown on Map recorded in Book 131 Pages 85 and 87 inclusive of Maps, in the Office of the County Recorder of said County, described as follows

Beginning at the Northeasterly corner of said Lot; thence along the Southeasterly line of said Lot, South 32 degrees 47 minutes 34 seconds West 50.00 feet; thence North 12 degrees 09 minutes 26 seconds West 42.33 feet to the Northerly line of said Lot; thence Easterly along said Northerly line to the place of beginning.

APN: 5630-010-038



This map is for your aid in locating the subject property with reference to streets and other parcels.  While this map is believed to be correct, Stewart Title of California and subsequent insurance companies, assume no liability for any loss occurred by reason of reliance thereon.

# EXHIBIT B (05-06-16)

## CALIFORNIA LAND TITLE ASSOCIATION STANDARD COVERAGE POLICY – 1990 EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy and the Company will not pay loss or damage, costs, attorneys' fees or expenses which arise by reason of:

1.  (a) Any law, ordinance or governmental regulation (including but not limited to building or zoning laws, ordinances, or regulations) restricting, regulating, prohibiting or relating to (i) the occupancy, use, or enjoyment of the land; (ii) the character, dimensions or location of any improvement now or hereafter erected on the land; (iii) a separation in ownership or a change in the dimensions or area of the land or any parcel of which the land is or was a part; or (iv) environmental protection, or the effect of any violation of these laws, ordinances or governmental regulations, except to the extent that a notice of the enforcement thereof or a notice of a defect, lien, or encumbrance resulting from a violation or alleged violation affecting the land has been recorded in the public records at Date of Policy.

     (b) Any governmental police power not excluded by (a) above, except to the extent that a notice of the exercise thereof or notice of a defect, lien or encumbrance resulting from a violation or alleged violation affecting the land has been recorded in the public records at Date of Policy.

2.  Rights of eminent domain unless notice of the exercise thereof has been recorded in the public records at Date of Policy, but not excluding from coverage any taking which has occurred prior to Date of Policy which would be binding on the rights of a purchaser for value without knowledge.

3.  Defects, liens, encumbrances, adverse claims or other matters:
    a.  whether or not recorded in the public records at Date of Policy, but created, suffered, assumed or agreed to by the insured claimant;
    b.  not known to the Company, not recorded in the public records at Date of Policy, but known to the insured claimant and not disclosed in writing to the Company by the insured claimant prior to the date the insured claimant became an insured under this policy;
    c.  resulting in no loss or damage to the insured claimant;
    d.  attaching or created subsequent to Date of Policy; or
    e.  resulting in loss or damage which would not have been sustained if the insured claimant had paid value for the insured mortgage or for the estate or interest insured by this policy.

4.  Unenforceability of the lien of the insured mortgage because of the inability or failure of the insured at Date of Policy, or the inability or failure of any subsequent owner of the indebtedness, to comply with the applicable doing business laws of the state in which the land is situated.

5.  Invalidity or unenforceability of the lien of the insured mortgage, or claim thereof, which arises out of the transaction evidenced by the insured mortgage and is based upon usury or any consumer credit protection or truth in lending law.

6.  Any claim, which arises out of the transaction vesting in the insured the estate of interest insured by this policy or the transaction creating the interest of the insured lender, by reason of the operation of federal bankruptcy, state insolvency or similar creditors' rights laws.

### EXCEPTIONS FROM COVERAGE - SCHEDULE B, PART I

This policy does not insure against loss or damage (and the Company will not pay costs, attorneys' fees or expenses) which arise by reason of:

1.  Taxes or assessments which are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the public records.
    Proceedings by a public agency which may result in taxes or assessments, or notices of such proceedings, whether or not shown by the records of such agency or by the public records.

2.  Any facts, rights, interests, or claims which are not shown by the public records but which could be ascertained by an inspection of the land or which may be asserted by persons in possession thereof.

3.  Easements, liens or encumbrances, or claims thereof, which are not shown by the public records.

4.  Discrepancies, conflicts in boundary lines, shortage in area, encroachments, or any other facts which a correct survey would disclose, and which are not shown by the public records.

5.  (a) Unpatented mining claims; (b) reservations or exceptions in patents or in Acts authorizing the issuance thereof; (c) water rights, claims or title to water, whether or not the matters excepted under (a), (b) or (c) are shown by the public records.

6.  Any lien or right to a lien for services, labor or material not shown by the public records.

### CLTA/ALTA HOMEOWNER'S POLICY OF TITLE INSURANCE (12-02-13) EXCLUSIONS

In addition to the Exceptions in Schedule B, You are not insured against loss, costs, attorneys' fees, and expenses resulting from:

1.  Governmental police power, and the existence or violation of those portions of any law or government regulation concerning:
    a.  building;
    b.  zoning;
    c.  land use;
    d.  improvements on the Land;
    e.  land division;
    f.  environmental protection.
    This Exclusion does not limit the coverage described in Covered Risk 8.a., 14, 15, 16, 18, 19, 20, 23 or 27.

2.  The failure of Your existing structures, or any part of them, to be constructed in accordance with applicable building codes. This Exclusion does not limit the coverage described in Covered Risk 14 or 15.

3.  The right to take the Land by condemning it. This Exclusion does not limit the coverage described in Covered Risk 17.

4.  Risks:
    a.  that are created, allowed, or agreed to by You, whether or not they appear in the Public Records;
    b.  that are Known to You at the Policy Date, but not to Us, unless they are recorded in the Public Records at the Policy Date;
    c.  that result in no loss to You; or
    d.  that first occur after the Policy Date - this does not limit the coverage described in Covered Risk 7, 8.e., 25, 26, 27 or 28.

5.  Failure to pay value for Your Title.

6.  Lack of a right:
    a.  to any land outside the area specifically described and referred to in paragraph 3 of Schedule A; and
    b.  in streets, alleys, or waterways that touch the Land.
    This Exclusion does not limit the coverage described in Covered Risk 11 or 21.

7.  The transfer of the Title to You is invalid as a preferential transfer or a fraudulent transfer or conveyance under federal bankruptcy.

8.  Contamination, explosion, fire, flooding, vibration, fracturing, earthquake, or subsidence.

9.  Negligence by a person or an Entity exercising a right to extract or develop minerals, water, or any other substances.

### LIMITATIONS ON COVERED RISKS

Your insurance for the following Covered Risks is limited on the Owner's Coverage Statement as follows:
* For Covered Risk 16, 18, 19, and 21 Your Deductible Amount and Our Maximum Dollar Limit of Liability shown in Schedule A.
The deductible amounts and maximum dollar limits shown on Schedule A are as follows:

| | Your Deductible Amount | Our Maximum Dollar Limit of Liability |
|---|---|---|
| Covered Risk 16: | 1% of Policy Amount or $2,500.00 (whichever is less) | $10,000.00 |
| Covered Risk 18: | 1% of Policy Amount or $5,000.00 (whichever is less) | $25,000.00 |
| Covered Risk 19: | 1% of Policy Amount or $5,000.00 (whichever is less) | $25,000.00 |
| Covered Risk 21: | 1% of Policy Amount or $2,500.00 (whichever is less) | $5,000.00 |

## 2006 ALTA LOAN POLICY (06-17-06) EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy, and the Company will not pay loss or damage, costs, attorneys' fees or expenses that arise by reason of:

1.  (a) Any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) restricting, regulating, prohibiting, or relating to
    (i)  the occupancy, use, or enjoyment of the Land;
    (ii)  the character, dimensions, or location of any improvement erected on the Land;
    (iii)  the subdivision of land; or
    (iv)  environmental protection;
    or the effect of any violation of these laws, ordinances, or governmental regulations. This Exclusion 1(a) does not modify or limit the coverage provided under Covered Risk 5.
    (b) Any governmental police power. This Exclusion 1(b) does not modify or limit the coverage provided under Covered Risk 6.

2.  Rights of eminent domain. This Exclusion does not modify or limit the coverage provided under Covered Risk 7 or 8.

3.  Defects, liens, encumbrances, adverse claims, or other matters
    (a) created, suffered, assumed, or agreed to by the Insured Claimant;
    (b) not Known to the Company, not recorded in the Public Records at Date of Policy, but Known to the Insured Claimant and not disclosed in writing to the Company by the Insured Claimant prior to the date the Insured Claimant became an Insured under this policy;
    (c) resulting in no loss or damage to the Insured Claimant;
    (d) attaching or created subsequent to Date of Policy (however, this does not modify or limit the coverage provided under Covered Risk 11, 13, or 14); or
    (e) resulting in loss or damage that would not have been sustained if the Insured Claimant had paid value for the Insured Mortgage.

4.  Unenforceability of the lien of the Insured Mortgage because of the inability or failure of an Insured to comply with applicable doing business laws of the state where the Land is situated.

5.  Invalidity or unenforceability in whole or in part of the lien of the Insured Mortgage that arises out of the transaction evidenced by the Insured Mortgage and is based upon usury or any consumer credit protection or truth-in-lending law.

6.  Any claim, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws, that the transaction creating the lien of the Insured Mortgage, is
    (a) a fraudulent conveyance or fraudulent transfer; or
    (b) a preferential transfer for any reason not stated in Covered Risk 13(b) of this policy.

7.  Any lien on the Title for real estate taxes or assessments imposed by governmental authority and created or attaching between Date of Policy and the date of recording of the Insured Mortgage in the Public Records. This Exclusion does not modify or limit the coverage provided under Covered Risk 11(b).

The above policy form may be issued to afford either Standard Coverage or Extended Coverage. In addition to the above Exclusions from Coverage, the Exceptions from Coverage in a Standard Coverage policy will also include the following Exceptions from Coverage:

### EXCEPTIONS FROM COVERAGE

PART I

This policy does not insure against loss or damage (and the company will not pay costs, attorneys' fees or expenses) which arise by reason of:

1.  (a) taxes or assessments which are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the Public Records.
    (b) Proceedings by a public agency which may result in taxes or assessments, or notices of such proceedings, whether or not shown by the records of such agency or by the Public Records.

2.  Any facts, rights, interests, or claims that are not shown by the Public Records but that could be ascertained by an inspection of the Land or that may be asserted by persons in possession of the Land.

3.  Easements, liens or encumbrances, or claims thereof, not shown by the Public Records.

4.  Any encroachment, encumbrance, violation, variation, or adverse circumstance affecting the Title that would be disclosed by an accurate and complete land survey of the Land and not shown by the Public Records.

5.  (a) unpatented mining claims; (b) reservations or exceptions in patents or in Acts authorizing the issuance thereof; (c) water rights, claims or title to water, whether or not the matters excepted under (a), (b) or (c) are shown by the Public Records.

6.  Any lien or right to a lien for services, labor or material not shown by the Public Records.

PART II

In addition to the matters set forth in Part I of this Schedule, the Title is subject to the following matters, and the Company insures against loss or damage sustained in the event that they are not subordinate to the lien of the Insured Mortgage:

## 2006 ALTA OWNER'S POLICY (06-17-06) EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy, and the Company will not pay loss or damage, costs, attorneys' fees, or expenses that arise by reason of:

1. (a) Any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) restricting, regulating, prohibiting, or relating to
   (i)   the occupancy, use, or enjoyment of the Land;
   (ii)  the character, dimensions, or location of any improvement erected on the Land;
   (iii) the subdivision of land; or
   (iv)  environmental protection;
   or the effect of any violation of these laws, ordinances, or governmental regulations. This Exclusion 1(a) does not modify or limit the coverage provided under Covered Risk 5.
   (b) Any governmental police power. This Exclusion 1(b) does not modify or limit the coverage provided under Covered Risk 6.
2. Rights of eminent domain. This Exclusion does not modify or limit the coverage provided under Covered Risk 7 or 8.
3. Defects, liens, encumbrances, adverse claims, or other matters
   (a) created, suffered, assumed, or agreed to by the Insured Claimant;
   (b) not Known to the Company, not recorded in the Public Records at Date of Policy, but Known to the Insured Claimant and not disclosed in writing to the Company by the Insured Claimant prior to the date the Insured Claimant became an Insured under this policy;
   (c) resulting in no loss or damage to the Insured Claimant;
   (d) attaching or created subsequent to Date of Policy (however, this does not modify or limit the coverage provided under Covered Risk 9 and 10); or
   (e) resulting in loss or damage that would not have been sustained if the Insured Claimant had paid value for the Title.
4. Any claim, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws, that the transaction vesting the Title as shown in Schedule A, is
   (a) a fraudulent conveyance or fraudulent transfer; or
   (b) a preferential transfer for any reason not stated in Covered Risk 9 of this policy.
5. Any lien on the Title for real estate taxes or assessments imposed by governmental authority and created or attaching between Date of Policy and the date of recording of the deed or other instrument of transfer in the Public Records that vests Title as shown in Schedule A.

The above policy form may be issued to afford either Standard Coverage or Extended Coverage. In addition to the above Exclusions fromCoverage, the Exceptions from Coverage in a Standard Coverage policy will also include the following Exceptions from Coverage:

## EXCEPTIONS FROM COVERAGE

This policy does not insure against loss or damage (and the company will not pay costs, attorneys' fees or expenses) which arise by reason of:

1. Taxes or assessments which are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the public records.
   Proceedings by a public agency which may result in taxes or assessments, or notices of such proceedings, whether or not shown by the records of such agency or by the public records.
2. Any facts, rights, interests or claims which are not shown by the public records but which could be ascertained by an inspection of the land or by making inquiry of persons in possession thereof.
3. Easements, liens or encumbrances, or claims thereof, which are not shown by the public records.
4. Any encroachment, encumbrance, violation, variation, or adverse circumstance affecting the Title that would be disclosed by an accurate and complete land survey of the Land and that are not shown by the Public Records.
5. (a) unpatented mining claims; (b) reservations or exceptions in patents or in Acts authorizing the issuance thereof; (c) water rights, claims or title to water, whether or not the matters excepted under (a), (b) or (c) are shown by the public records.
6. Any lien or right to a lien for services, labor or material not shown by the public records.

## ALTA EXPANDED COVERAGE RESIDENTIAL LOAN POLICY (04-02-15) EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy, and the Company will not pay loss or damage, costs, attorneys fees or expenses which arise by reason of:

1. a. Any law, ordinance or governmental regulation (including but not limited to building and zoning laws, ordinances, or regulations) restricting, regulating, prohibiting or relating to
   (i)   the occupancy, use, or enjoyment of the Land;
   (ii)  the character, dimensions or location of any improvement now or hereafter erected on the Land;
   (iii) the subdivision of land; or
   (iv)  environmental protection or the effect of any violation of these laws, ordinances, or governmental regulations. This Exclusion 1(a) does not modify or limit the coverage provided under Covered Risk 5, 6, 13(c), 13(d), 14 or 16.
   b. Any governmental police power. This Exclusion 1(b) does not modify or limit the coverage provided under Covered Risk 5, 6, 13(c), 13(d), 14 or 16.
2. Rights of eminent domain. This Exclusion does not modify or limit the coverage provided under Covered Risk 7 or 8.
3. Defects, liens, encumbrances, adverse claims or other matters:
   (a) created, suffered, assumed or agreed to by the Insured Claimant;
   (b) not Known to the Company, not recorded in the Public Records at Date of Policy, but Known to the Insured Claimant and not disclosed in writing to the Company by the Insured Claimant prior to the date the Insured Claimant became an Insured under this policy;
   (c) resulting In no loss or damage to the Insured Claimant;
   (d) attaching or created subsequent to Date of Policy (however, this does not modify or limit the coverage provided under Covered Risk 11, 16, 17, 18, 19, 20, 21, 22, 23, 24, 27 or 28); or
   (e) resulting in loss or damage which would not have been sustained if the Insured Claimant had paid value for the Insured Mortgage.
4. Unenforceability of the lien of the Insured Mortgage because of the inability or failure of an Insured to comply with applicable doingbusiness laws of the state where the Land is situated.
5. Invalidity or unenforceability in whole or in part of the lien of the Insured Mortgage that arises out of the transaction evidenced by the Insured Mortgage and is based upon usury, or any consumer credit protection or truth-in-lending law. This Exclusion does not modify or limit the coverage provided in Covered Risk 26.
6. Any claim of invalidity, unenforceability or lack of priority of the lien of the Insured Mortgage as to Advances or modifications made after the Insured has Knowledge that the vestee shown in Schedule A is no longer the owner of the estate o r interest covered by this policy. This Exclusion does not modify or limit the coverage provided in Covered Risk 11.
7. Any lien on the Title for real estate taxes or assessments imposed by governmental authority and created or attaching subsequent to Date of Policy. This Exclusion does not modify or limit the coverage provided in Covered Risk 11(b) or 25.
8. The failure of the residential structure, or any portion of it, to have been constructed before, on or after Date of Policy in accordance with applicable building codes. This Exclusion does not modify or limit the coverage provided in Covered Risk 5 or 6.
9. Any claim, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws, that the transaction creating the lien of the Insured Mortgage, is
   (a) a fraudulent conveyance or fraudulent transfer, or
   (b) a preferential transfer for any reason not stated in Covered Risk 27(b) of this policy.
10 Contamination, explosion, fire, flooding, vibration, fracturing, earthquake, or subsidence.
11. Negligence by a person or an Entity exercising a right to extract or develop minerals, water, or any other substances.

---

| Exhibit B | Created: 11/30/2017 | CA0610-17001235-60 |

## Statement of Information (Confidential)

Note: This form is needed in order to eliminate judgments and liens against people with similar names

The street address of the property in this transaction is:   (if none, leave blank)

Address _____   City _____

Occupied by: ☐ Owner  ☐ Tenants  ☐ Lessee      ☐ Single Residence  ☐ Multiple Residence  ☐ Commercial  ☐ Vacant Land

Any construction/improvements in last 6 months?  ☐ Yes  ☐ No   Is any portion of new loan to be used for improvements?  ☐ Yes  ☐ No

If yes, state nature of work done or contemplated _____

| *Party 1* | *Party 2* |
|---|---|
| First        Middle        Last | First        Middle        Last |
| Former last name(s), if any | Former last name(s), if any |
| Birthplace        Birth Date | Birthplace        Birth Date |
| Social Security No.        Driver's License No. | Social Security No.        Driver's License No. |
| I ☐ am single  ☐ am married  ☐ Have a domestic partner | I ☐ am single  ☐ am married  ☐ Have a domestic partner |
| Name of underline current spouse or domestic partner (if other than Party 2) | Name of current spouse or domestic partner (if other than Party 1) |
| Name of former spouse/domestic partner (if none, write "none") | Name of former spouse/domestic partner (if none, write "none") |

**Marriage or Domestic Partnership Between Parties 1 and 2**

Are Parties 1 & 2:    Married?_____    Domestic Partners? _____    Date of Marriage/Domestic Partnership:_____

**Party 1 – Occupations for Last 10 Years**

| Present Occupation | Firm Name | Address | No. of Years |
|---|---|---|---|
| Prior Occupation | Firm Name | Address | No. of Years |

**Party 1 – Residences for Last 10 Years**

| Number and Street | City and State | From        To |
|---|---|---|
| | | |
| | | |
| | | |

**Party 2 – Occupations for Last 10 Years**

| Present Occupation | Firm Name | Address | No. of Years |
|---|---|---|---|
| Prior Occupation | Firm Name | Address | No. of Years |

**Party 2 – Residences for Last 10 Years**

| Number and Street | City and State | From        To |
|---|---|---|
| | | |
| | | |
| | | |

Have any of the above parties owned or operated a business?  ☐ Yes  ☐ No   If so, please list names

I have never been adjudged, bankrupt nor are there any unsatisfied judgments or other matters pending against me which might affect my title to this property, except as follows:

The undersigned declare under penalty of perjury that the above information is true and correct.      (all parties must sign)

| Date | Signature | Signature |
|---|---|---|
| | Home Phone        Work Phone | Home Phone        Work Phone |
| | Email Address | Email Address |

CA0610-17001235-60

27

# stewart title®

4195 East Thousand Oaks Boulevard, Suite 107, Westlake Village, CA 91362
Main: (805) 367-5624 | Direct: (805) 367-5628

Title Company:     Stewart Title of California
Title Order No.:    CA0610-17001235-60
Escrow Holder:     A & A Escrow Services, Inc.
Escrow No.:        CA0610-17001235-60

## CERTIFICATION OF TRUSTEES UNDER TRUST
### (California Probate Code Section 18100.5)

1.    Declarant(s), the currently acting Trustee(s) of the Trust, certify the existence of the following described Trust and facts regarding said Trust:

Name of Trust: _____

Made Under the Laws of the State of _____

Date of Execution of Trust: _____

The name of the Trustee(s) now qualified to act under the Trust instrument and who are the only qualified Trustee(s): _____

Settlor(s): _____

Social Security No. or Employer Identification No. _____

2.    Declarant(s) certify that if fewer than all currently acting Trustees are required to sign, the Trustee(s) named below are all those necessary to execute documents on behalf of the Trust:

Trustee(s) _____

_____

3.    Declarant(s) certify that the Trust is in full force and effect and has not been revoked, terminated, or otherwise amended in any manner which would cause the representation in this Certification to be incorrect, except as follows:

_____

_____

4.    The Trust is         ☐         irrevocable

                           ☐         revocable and the person(s) holding the power to revoke is/are:

_____

5.    The manner in which title to Trust assets is to be taken is:

_____

6.    Declarant(s) state that the above named trustee(s) is/are fully empowered to act for said trust and is/are properly exercising his/her/their authority under said Trust in negotiating for, contracting for, and executing these document(s).

_____

_____

7.    Declarant(s) state(s) that to the best of his/her/their knowledge, there are no claims, challenges of any kind or causes of action alleged, contesting or questioning the validity of the Trust or the trustee's authority to act for the trust.

This document is to be signed by all of the currently acting Trustees:

I declare that the statements contained herein are true and correct and are made under penalty of perjury, this _____ day of _____, 20_____.

_____          _____
Signature                                                        Address

_____          _____
Name (Type or Print)

_____          _____
Signature                                                        Address

_____          _____
Name (Type or Print)

Subscribed and sworn (or affirmed) before me on this _____ day of _____, 20_____, by _____, proved to me on the basis of satisfactory evidence to be the person(s) who appeared before me.

Notary Signature: _____

Space below reserved for notary seal.

# stewart title®

,

Main: (877) 365-9365 | Direct:

| | |
|---|---|
| Date: | November 30, 2017 |
| Escrow No.: | CA0610-17001235-60 |
| Loan No.: | |
| Borrower(s): | 631 Caleb Trust / 631 Caleb Trust |
| Property Address: | 631 Caleb Street |
| | Glendale, CA 91202 |

Attn: Line of Credit – Payoff Dept.

With regard to our equity/credit line with the account number of , we hereby certify that:

**TO LENDER:**
I/We hereby request that the above referenced credit line account be FROZEN AND CLOSED as of the date of your receipt of this notice. I/We contemplate payment in full of the Note secured by Trust Deed shortly through the above referenced escrow with A & A Escrow Services, Inc.. I/We agree NOT to request any advances on this account on or after the date of this letter. Upon payment in full by A & A Escrow Services, Inc., you are instructed to close the above referenced account and forward a reconveyance/release and/or satisfaction to the appropriate county recorder's office for recording.

**TO A & A Escrow Services, Inc.:**
I/We further warrant to A & A Escrow Services, Inc. that I/we, as of the date shown above, will no longer use the referenced credit line account and will immediately destroy all unused checks.

I/We fully understand and acknowledge that if funds from the referenced credit line account are advanced, for whatever purpose and/or reason, with or without my/our consent, that I/we will be held fully responsible to immediately deposit with A & A Escrow Services, Inc. sufficient funds to cover the advance(s). In the event funds are remaining in escrow for the payment of the advance(s) in full or in part, A & A Escrow Services, Inc. is hereby instructed to utilize said funds until exhausted and make demand for the balance from me/us, if necessary.

I/We will be responsible for any and all charges, which are presented for payment, including charges presented after the requested demand is prepared.

If A & A Escrow Services, Inc. advances on my/our behalf, funds to payoff the Equity Line/Credit Line in full, I/We Agree, upon written demand, to promptly reimburse A & A Escrow Services, Inc..

Sincerely,

631 Caleb Trust / 631 Caleb Trust

BY:_____

**AFFIDAVIT - UNINSURED DEED**
*NOTE: Must be notarized by a notary who is an EMPLOYEE of the title or escrow company*

STATE OF _____ )
                                                            ) SS.
COUNTY OF _____ )

_____ of legal age, being first duly sworn, deposes and says that the following information and answers are true:

25.    I am the person who executed and delivered the deed dated _____ to _____, grantee, recorded on _____ as Instrument No. _____, Official Records of _____ County, _____, conveying title to the following described real property (the "Property"):

2.    Who is currently occupying the Property? _____.

3.    What is the approximate value of the Property? $_____.

4.    I received the following consideration for the deed: $_____ and/or other Property described as follows: _____.

5.    If the deed was a gift or I otherwise received no consideration for it, the reason I gave the Property away is: _____.

6.    Do you have an option to repurchase the Property? _____. If so, <u>please attach a copy</u> of the agreement or documentation that gives you the right to repurchase.

7.    This Affidavit is made for the protection and benefit of the grantee, the grantee's successors and assigns, and for all other parties hereafter dealing with or who may acquire an interest in the Property, and for the purpose of inducing _____ ("Title Company") to insure title to the Property. I know that Title Company will rely on this Affidavit and would not insure title without this Affidavit.

Dated: _____             _____

                                                                      _____

Subscribed and sworn to (or affirmed) before me on this
_____ day of _____, _____, by
_____,
proved to me on the basis of satisfactory evidence to
be the person(s) who appeared before me.


Signature _____                        (This area for notary stamp)

BOE-502-A (P1) REV. 12 (05-13)

## PRELIMINARY CHANGE OF OWNERSHIP REPORT

To be completed by the transferee (buyer) prior to a transfer of subject property, in accordance with section 480.3 of the Revenue and Taxation Code. A *Preliminary Change of Ownership Report* must be filed with each conveyance in the County Recorder's office for the county where the property is located.

NAME AND MAILING ADDRESS OF BUYER/TRANSFEREE
*(Make necessary corrections to the printed name and mailing address)*

Brian Der Vartanian
631 Caleb St
Glendale, CA 91202

| ASSESSOR'S PARCEL NUMBER |
| --- |
| 5630-010-038 |
| SELLER/TRANSFEROR |
| 631 Caleb Trust / 631 Caleb Trust |
| BUYER'S DAYTIME TELEPHONE NUMBER |
| (    ) |
| BUYER'S EMAIL ADDRESS |

STREET ADDRESS OR PHYSICAL LOCATION OF REAL PROPERTY
631 Caleb Street, Glendale, CA 91202

MAIL PROPERTY TAX INFORMATION TO (NAME)
Brian Der Vartanian

| ADDRESS | CITY | STATE | ZIP CODE |
| --- | --- | --- | --- |
| 631 Caleb St | Glendale | CA | 91202 |

| ☐ YES   ☐ NO | This property is intended as my principal residence. If YES, please indicate the date of occupancy or intended occupancy. | MO | DAY | YEAR |
| --- | --- | --- | --- | --- |

## PART 1.   TRANSFER INFORMATION        *Please complete all statements.*

This section contains possible exclusions from reassessment for certain types of transfers.

YES NO

☐ ☐   A. This transfer is solely between spouses *(addition or removal of a spouse, death of a spouse, divorce settlement, etc.)*.

☐ ☐   B. This transfer is solely between domestic partners currently registered with the California Secretary of State *(addition or removal of a partner, death of a partner, termination settlement, etc.)*.

☐ ☐   *C. This is a transfer:  ☐ between parent(s) and child(ren)   ☐ from grandparent(s) to grandchild(ren).

☐ ☐   *D. This transfer is the result of a cotenant's death. Date of death _____

☐ ☐   *E. This transaction is to replace a principal residence by a person 55 years of age or older.
      Within the same county?  ☐ YES   ☐ NO

☐ ☐   *F. This transaction is to replace a principal residence by a person who is severely disabled as defined by Revenue and Taxation Code section 69.5. Within the same county?  ☐ YES   ☐ NO

☐ ☐   G. This transaction is only a correction of the name(s) of the person(s) holding title to the property *(e.g., a name change upon marriage)*.
      If YES, please explain: _____

☐ ☐   H. The recorded document creates, terminates, or reconveys a lender's interest in the property.

☐ ☐   I. This transaction is recorded only as a requirement for financing purposes or to create, terminate, or reconvey a security interest *(e.g., cosigner).* If YES, please explain: _____

☐ ☐   J. The recorded document substitutes a trustee of a trust, mortgage, or other similar document.

      K. This is a transfer of property:

☐ ☐     1. to/from a revocable trust that may be revoked by the transferor and is for the benefit of
        ☐ the transferor, and/or   ☐ the transferor's spouse   ☐ registered domestic partner.

☐ ☐     2. to/from a trust that may be revoked by the creator/grantor/trustor who is also a joint tenant, and which names the other joint tenant(s) as beneficiaries when the creator/grantor/trustor dies.

☐ ☐     3. to/from an irrevocable trust for the benefit of
        ☐ creator/grantor/trustor and/or   ☐ grantor's/trustor's spouse   ☐ grantor's/trustor's registered domestic partner.

☐ ☐   L. This property is subject to a lease with a remaining lease term of 35 years or more including written options.

☐ ☐   M. This is a transfer between parties in which proportional interests of the transferor(s) and transferee(s) in each and every parcel being transferred remain exactly the same after the transfer.

☐ ☐   N. This is a transfer subject to subsidized low-income housing requirements with governmentally imposed restrictions.

☐ ☐   *O. This transfer is to the first purchaser of a new building containing an active solar energy system.

     * Please refer to the instructions for Part 1.

     **Please provide any other information that will help the Assessor understand the nature of the transfer.**

## THIS DOCUMENT IS NOT SUBJECT TO PUBLIC INSPECTION

BOE-502-A  (P2) REV. 12 (05-13)

**PART 2.  OTHER TRANSFER INFORMATION**          *Check and complete as applicable.*

A.  Date of transfer, if other than recording date: _____

B.  Type of transfer:

☐ Purchase     ☐ Foreclosure     ☐ Gift     ☐ Trade or exchange     ☐ Merger, stock, or partnership acquisition (Form BOE-100-B)

☐ Contract of sale.  Date of contract: _____          ☐ Inheritance.  Date of death: _____

☐ Sale/leaseback     ☐ Creation of a lease     ☐ Assignment of a lease     ☐ Termination of a lease.  Date lease began: _____

Original term in years *(including written options)*: _____     Remaining term in years *(including written options)*: _____

☐ Other.  Please explain: _____

C.  Only a partial interest in the property was transferred.  ☐ YES  ☐ NO          If YES, indicate the percentage transferred: _____%

**PART 3.  PURCHASE PRICE AND TERMS OF SALE**          *Check and complete as applicable.*

A.  Total purchase price.                                                                    $_____

B.  Cash down payment or value of trade or exchange excluding closing costs          Amount $_____

C.  First deed of trust @_____% interest for _____ years.  Monthly payment $_____     Amount $_____

☐ FHA (____Discount Points)     ☐ Cal-Vet     ☐ VA (____Discount Points)     ☐ Fixed rate     ☐ Variable rate

☐ Bank/Savings & Loan/Credit Union     ☐ Loan carried by seller

☐ Balloon payment $_____     Due date: _____

D.  Second deed of trust @_____% interest for _____ years.  Monthly payment $_____     Amount $_____

☐ Fixed rate     ☐ Variable rate     ☐ Bank/Savings & Loan/Credit Union     ☐ Loan carried by seller

☐ Balloon payment $_____     Due date: _____

E.  Was an Improvement Bond or other public financing assumed by the buyer?  ☐ YES  ☐ NO     Outstanding balance $_____

F.  Amount, if any, of real estate commission fees paid by the buyer which are not included in the purchase price          $_____

G.  The property was purchased:  ☐ Through real estate broker.  Broker name: _____     Phone number: (____)_____

☐ Direct from seller     ☐ From a family member-Relationship _____

☐ Other. Please explain: _____

H.  Please explain any special terms, seller concessions, broker/agent fees waived, financing, and any other information (e.g., buyer assumed the
existing loan balance) that would assist the Assessor in the valuation of your property. _____

**PART 4.  PROPERTY INFORMATION**          *Check and complete as applicable.*

A.  Type of property transferred

☐ Single-family residence                    ☐ Co-op/Own-your-own                ☐ Manufactured home

☐ Multiple-family residence.  Number of units: _____     ☐ Condominium          ☐ Unimproved lot

☐ Other.  Description:  (i.e., timber, mineral, water rights, etc.)     ☐ Timeshare          ☐ Commercial/Industrial

B.  ☐ YES  ☐ NO  Personal/business property, or incentives, provided by seller to buyer are included in the purchase price.  Examples of personal
property are furniture, farm equipment, machinery, etc. Examples of incentives are club memberships, etc. Attach list if available.

If YES, enter the value of the personal/business property:          $_____          Incentives $_____

C.  ☐ YES  ☐ NO  A manufactured home is included in the purchase price.

If YES, enter the value attributed to the manufactured home:          $_____

☐ YES  ☐ NO  The manufactured home is subject to local property tax.  If NO, enter decal number: _____

D.  ☐ YES  ☐ NO  The property produces rental or other income.

If YES, the income is from:  ☐ Lease/rent  ☐ Contract  ☐ Mineral rights  ☐ Other: _____

E.  The condition of the property at the time of sale was:  ☐ Good  ☐ Average  ☐ Fair  ☐ Poor

Please describe: _____

### CERTIFICATION

*I certify (or declare) that the foregoing and all information hereon, including any accompanying statements or documents, is true and correct to the best
of my knowledge and belief.*

| SIGNATURE OF BUYER/TRANSFEREE OR CORPORATE OFFICER | DATE | TELEPHONE |
|---|---|---|
| ► | | (    ) |

| NAME OF BUYER/TRANSFEREE/LEGAL REPRESENTATIVE/CORPORATE OFFICER (PLEASE PRINT) | TITLE | E-MAIL ADDRESS |
|---|---|---|
| | | |

The Assessor's office may contact you for additional information regarding this transaction.

CA0610-17001235-60

FORM B104 (08/07)                                                    2007 USBC, Central District of California

| ADVERSARY PROCEEDING COVER SHEET<br>(Instructions on Page 2) | ADVERSARY PROCEEDING NUMBER<br>(Court Use Only) |
|---|---|

| PLAINTIFFS<br>DAVID SEROR, Chapter 7 Trustee, | DEFENDANTS<br>ALFRED GREGORIAN, and LA VISTA PROPERTIES, |
|---|---|
| ATTORNEYS (Firm Name, Address, and Telephone No.)<br>Brutzkus Gubner<br>21650 Oxnard Street, Suite 500<br>Woodland Hills, CA  91367<br>(818) 827-9000 | ATTORNEYS (If Known) |

**PARTY** (Check One Box Only)
- [ ] Debtor
- [ ] Creditor
- [ ] Trustee
- [ ] U.S. Trustee/Bankruptcy Admin
- [x] Other

**PARTY** (Check One Box Only)
- [ ] Debtor
- [ ] Creditor
- [ ] Trustee
- [ ] U.S. Trustee/Bankruptcy Admin
- [x] Other

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)

Complaint to Determine Validity, Priority and Extent of Liens (11 U.S.C. §544)

**NATURE OF SUIT** (Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(1) – Recovery of Money/Property**
- [ ] 11-Recovery of money/property - §542 turnover of property
- [ ] 12-Recovery of money/property - §547 preference
- [ ] 13-Recovery of money/property - §548 fraudulent transfer
- [ ] 14-Recovery of money/property – other

**FRBP 7001(2) – Validity, Priority or Extent of Lien**
- **1** 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) – Approval of Sale of Property**
- [ ] 31-Approval of sale of property of estate and of a co-owner - §363(h)

**FRBP 7001(4) – Objection/Revocation of Discharge**
- [ ] 41-Objection / revocation of discharge - §727(c),(d),(e)

**FRBP 7001(5) – Revocation of Confirmation**
- [ ] 51-Revocation of confirmation

**FRBP 7001(6) – Dischargeability**
- [ ] 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims
- [ ] 62-Dischargeability – §523(a)(2), false pretenses, false representation, actual fraud
- [ ] 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny

(continued next column)

**FRBP 7001(6) – Dischargeability (continued)**
- [ ] 61-Dischargeability - §523(a)(5), domestic support
- [ ] 68-Dischargeability - §523(a)(6), willful and malicious injury
- [ ] 63-Dischargeability - §523(a)(8), student loan
- [ ] 64-Dischargeability - §523(a)(15), divorce or separation obligation(other than domestic support)
- [ ] 65-Dischargeability - other

**FRBP 7001(7) – Injunctive Relief**
- [ ] 71-Injunctive relief – imposition of stay
- [ ] 72-Injunctive relief – other

**FRBP 7001(8) Subordination of Claim or Interest**
- [ ] 81-Subordination of claim or interest

**FRBP 7001(9) Declaratory Judgment**
- [ ] 91-Declaratory judgment

**FRBP 7001(10) Determination of Removed Action**
- [ ] 01-Determination of removed claim or cause

**Other**
- [ ] SS-SIPA Case – 15 U.S.C. §§78aaa et. seq.
- [ ] 02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)

| [ ] Check if this case involves a substantive issue of state law | [ ] Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| [ ] Check if a jury trial is demanded in complaint | Demand $  To Be Determined |
| Other Relief Sought | |

FORM B104 (08/07), page 2                                                    2007 USBC, Central District of California

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | |
|---|---|---|

| NAME OF DEBTOR | BANKRUPTCY CASE NO. | |
|---|---|---|
| OWNER MANAGEMENT SERVICE, LLC; OMS, LLC dba in California as OMS GLOBAL, LLC, f/k/a RAMSFIRE GLOBAL, LLC; RAMSFIRE EQUITY PARTNERS, INC.; WESTSIDE SERVICING COMPANY; CD-04, INC.; CREATIVE GROUP RESOURCE, LLC; DOROTHY MATSUBA; THOMAS MATSUBA; and JAMIE MATSUBA, | 1:12-bk-10231-MT | |

| DISTRICT IN WHICH CASE IS PENDING | DIVISIONAL OFFICE | NAME OF JUDGE |
|---|---|---|
| Central District of California | San Fernando Valley Division | The Honorable Maureen Tighe |

| RELATED ADVERSARY PROCEEDING (IF ANY) | | |
|---|---|---|
| PLAINTIFF | DEFENDANT | ADVERSARY PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING | DIVISIONAL OFFICE | NAME OF JUDGE |

| SIGNATURE OF ATTORNEY (OR PLAINTIFF) | |
|---|---|
| /s/ Michael Davis | |
| DATE<br>7/17/2018 | PRINT NAME OF ATTORNEY (OR PLAINTIFF)<br>**Brutzkus Gubner**<br>**By: Michael Davis** |

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 104, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 104 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendants.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party.** Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not presented by an attorney, the plaintiff must sign.

| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| STEVEN T. GUBNER – Bar No. 156593<br>RICHARD D. BURSTEIN - Bar No. 56661<br>MICHAEL W. DAVIS - Bar No. 274126<br>BRUTZKUS GUBNER<br>21650 Oxnard Street, Suite 500<br>Woodland Hills, CA 91367<br>Telephone: (818) 827-9000<br>Facsimile: (818) 827-9099<br>Email: sgubner@bg.law<br>          mdavis@bg.law<br>          mdavis@bg.law<br>*Attorney for Plaintiff* | |

## UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA -  SAN FERNANDO VALLEY DIVISION

| In re:<br>OWNER MANAGEMENT SERVICE, LLC; OMS, LLC dba in California as OMS GLOBAL, LLC, f/k/a RAMSFIRE GLOBAL, LLC; RAMSFIRE EQUITY PARTNERS, INC.; WESTSIDE SERVICING COMPANY; CD-04, INC.; CREATIVE GROUP RESOURCE, LLC; DOROTHY MATSUBA; THOMAS MATSUBA; and JAMIE MATSUBA,<br><div align="right">Debtor(s).</div> | CASE NO.: 1:12-bk-10231-MT<br><br>CHAPTER: 7<br><br><br>ADVERSARY NUMBER: 1:18-ap-          -MT |
| DAVID SEROR, Chapter 7 Trustee,<br><br><br><div align="right">Plaintiff(s)</div><div align="center">Versus</div>ALFRED GREGORIAN, and LA VISTA PROPERTIES,<br><br><br><div align="right">Defendant(s)</div> | **SUMMONS AND NOTICE OF STATUS CONFERENCE IN ADVERSARY PROCEEDING  [LBR 7004-1]** |

TO THE DEFENDANT:  A Complaint has been filed by the Plaintiff against you.  If you wish to defend against the Complaint, you must file with the court a written pleading in response to the Complaint.  You must also serve a copy of your written response on the party shown in the upper left-hand corner of this page.  The deadline to file and serve a written response is _____.  If you do not timely file and serve the response, the court may enter a judgment by default against you for the relief demanded in the Complaint.

A status conference in the adversary proceeding commenced by the Complaint has been set for:

> **Hearing Date:** _____      **Place:**
> **Time:** _____      ☐ 255 East Temple Street, Los Angeles, CA 90012
> **Courtroom:** _____      ☐ 3420 Twelfth Street, Riverside, CA 92501
>       ☐ 411 West Fourth Street, Santa Ana, CA 92701
>       ☐ 1415 State Street, Santa Barbara, CA 93101
>       ☒ 21041 Burbank Boulevard, Woodland Hills, CA 91367

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

**You must comply with LBR 7016-1, which requires you to file a joint status report and to appear at a status conference.**  All parties must read and comply with the rule, even if you are representing yourself.  You must cooperate with the other parties in the case and file a joint status report with the court and serve it on the appropriate parties at least 14 days before a status conference.  A court-approved joint status report form is available on the court's website (LBR form F 7016-1.STATUS.REPORT) with an attachment for additional parties if necessary (LBR form F 7016-1.STATUS.REPORT.ATTACH).  If the other parties do not cooperate in filing a joint status report, you still must file with the court a unilateral status report and the accompanying required declaration instead of a joint status report 7 days before the status conference.  **The court may fine you or impose other sanctions if you do not file a status report.  The court may also fine you or impose other sanctions if you fail to appear at a status conference.**

**KATHLEEN J. CAMPBELL
CLERK OF COURT**

Date of Issuance of Summons and Notice of Status Conference in Adversary Proceeding: _____

By: _____
                       Deputy Clerk

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

A true and correct copy of the foregoing document entitled: **SUMMONS AND NOTICE OF STATUS CONFERENCE IN ADVERSARY PROCEEDING [LBR 7004-1]** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) _____, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☐  Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐  Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

_____  _____  _____
_Date_                         _Printed Name_                          _Signature_

---

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                    Page 3                                **F 7004-1.SUMMONS.ADV.PROC**